IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  11-cv-01816-PAB-KLM

BILLY D. COTTRELL, an individual,

      Plaintiff,

v.

LEPRINO FOODS COMPANY,

      Defendant.

---

**ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's First and Second Claims for Relief [Docket No. 21] filed by defendant Leprino Foods Company ("Leprino").  The Court's jurisdiction is based on 28 U.S.C. § 1331.  Plaintiff alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a).

## I. BACKGROUND

The following facts are undisputed.  Plaintiff Billy D. Cottrell was born on May 30, 1951.  Docket No. 21 at 1, ¶ 2; Docket No. 35 at 1, ¶ 2.  Defendant is a Colorado corporation that manufactures and distributes dairy products.  Plaintiff began working as a full-time employee for defendant in the summer of 1993.  Docket No. 4 at 4, ¶ 17; Docket No. 21 at 1, ¶ 1.  Plaintiff was employed as a warehouse operator.  Docket No. 21 at 1, ¶ 1; Docket No. 35 at 1, ¶ 1.

Defendant's safe operating practices require that, to determine whether a refrigerated truck is at the correct temperature, employees manually check the setting displayed on the temperature gauge on the outside of the trailer.  Docket No. 21 at 2, ¶ 5; Docket No. 21-4 at 2, Cottrell dep., 207:23-208:7.  In September 2009, defendant shipped a trailer of frozen cheese from the Fort Morgan warehouse in Colorado, where plaintiff was employed, to Florida.  Docket No. 21 at 2, ¶ 6; Docket No. 35 at 2, ¶ 6.  The trailer was shipped at a higher temperature than appropriate and, as a result, the shipment was ruined.  *Id*.

On September 22, 2009, plaintiff attended a pre-shift meeting at which employees were reminded that they had to check the temperature setting on the outside of the truck.  Docket No. 21 at 3, ¶¶ 7-8; Docket No. 21-4 at 3, Cottrell dep., 195 ll.9-16.  Later that day, plaintiff loaded a shipment of frozen cheese and, instead of checking the temperature on the outside of the truck, asked the driver what the temperature was.  Docket No. 21 at 3, ¶ 9; Docket No. 35 at 2, ¶ 9.  Plaintiff's supervisors observed this incident, confronted plaintiff, and subsequently issued him a warning for his failure to check the temperature and for falsely recording that he had checked the temperature when he had not.  Docket No. 21 at 3-4, ¶¶ 10-11; Docket No. 35 at 3, ¶¶ 10-11; Docket No. 21-12.  As a result of this incident, defendant terminated plaintiff's employment.  Docket No. 21 at 4, ¶ 12; Docket No. 35 at 3, ¶ 12.  Plaintiff was 58 years old at the time of his termination on September 28, 2009.  Docket No. 21 at 1, ¶ 2; Docket No. 35 at 1, ¶ 2.

On July 12, 2011, plaintiff filed this case, alleging that defendant (1) terminated him because of his age in violation of the ADEA; (2) retaliated against him for opposing

age-based discrimination in violation of Title VII; and (3) subjected him to a hostile work

environment because of his age.  Docket Nos. 1, 4.  On July 3, 2012, defendant filed a

motion for summary judgment on plaintiff's first two claims for relief.  Docket No. 21.

Defendant has not moved for summary judgment on plaintiff's hostile work environment

claim and, as a result, that cause of action survives.

## II.  STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, a court "shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  In pursuing summary

judgment, the moving party generally bears the initial burden of showing the absence of

a genuine dispute concerning a material fact in the case.  *Celotex Corp. v. Catrett,* 477

U.S. 317, 323 (1986).  However, "[w]hen, as in this case, the moving party does not

bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary

judgment stage by identifying a lack of evidence for the nonmovant on an essential

element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d

1111, 1115 (10th Cir. 2001).

"Once the moving party meets this burden, the burden shifts to the nonmoving

party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of*

*Colorado, Inc. v. City & Cnty. of Denver,* 36 F.3d 1513, 1518 (10th Cir. 1994) (citing

*Celotex,* 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations

in the pleadings, but instead must designate "specific facts showing that there is a

genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* FED. R. CIV. P. 56(e). "To avoid

summary judgment, the nonmovant must establish, at a minimum, an inference of the

presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.

However, to be clear, "it is not the party opposing summary judgment that has the

burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank

v. Hubbell,* 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and

preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198

(10th Cir. 2005). A fact is "material" if, under the relevant substantive law, it is essential

to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32

(10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a

reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119

F.3d 837, 839 (10th Cir. 1997) (citing *Anderson,* 477 U.S. at 248).

## III. DISCUSSION

### A.  Age Discrimination in Employment Act

Plaintiff alleges that he was terminated because of his age in violation of the

ADEA. The ADEA prohibits employers from discriminating against any "individual with

respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's age." 29 U.S.C. § 623(a)(1). It protects employees who are forty

years of age or older. *Id*. at 631(a). The ADEA requires "but-for" causation, meaning

that a plaintiff claiming age discrimination must establish by a preponderance of the

evidence that, but for his age, his employer would not have taken the adverse action.

*Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009).  However, "*Gross* does not

disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary

requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse

employment action." *Jones v. Okla. City Pub. Schs.,* 617 F.3d 1273, 1278 (10th Cir.

2010).  A plaintiff may prove discrimination indirectly, using the *McDonnell Douglas*

three-part burden-shifting framework.  *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296

F.3d 1177, 1180 (10th Cir. 2002); *see McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973); *Jones*, 617 F.3d at 1278 (*Gross* "does not preclude our continued

application of *McDonnell Douglas* to ADEA claims.").  As plaintiff does not offer direct

evidence of discrimination, the Court will apply the *McDonnell Douglas* framework to his

claims.

At step one of the *McDonnell Douglas* inquiry, a plaintiff must establish a prima

facie case by showing that (1) he was a member of a protected class; (2) he was

qualified for his job; (3) he was discharged despite his qualifications; and (4) there is

some additional evidence giving rise to an inference of discrimination, for example, the

position was not eliminated or is now filled by a younger employee.  *Kendrick v. Penske*

*Transp. Servs. Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (citing *Perry v. Woodward*,

199 F.3d 1126, 1138 (10th Cir. 1999); *Salguero v. City of Clovis*, 366 F.3d 1168, 1175

(10th Cir. 2004).  If the plaintiff succeeds in establishing a prima facie case, the burden

shifts to the defendant employer to show that it had a legitimate, nondiscriminatory

reason for its adverse employment action.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d

1312, 1321 (10th Cir. 2004).  If the defendant puts forward a legitimate reason, the

court must grant the defendant summary judgment, unless the plaintiff can show a genuine issue of material fact as to whether the stated reason for the adverse action is pretextual.  *Id*.

Here, even assuming that plaintiff can establish a prima facie case, he does not raise a genuine dispute of material fact regarding whether defendant's stated reason for his termination was pretextual.  A plaintiff may show pretext by demonstrating that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's stated reason such that "a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996) (internal quotation marks omitted).

Defendant asserts that plaintiff was terminated because of the incident on September 22, 2009.  Docket No. 21 at 4, ¶ 12.  Plaintiff counters that this reason is pretextual because (1) defendant has been inconsistent in stating its reason for terminating plaintiff; (2) violations of the policy at issue were widespread and rarely punished; defendant's investigation of the incident was insufficient; and (3) employees and supervisors referred to plaintiff as "old man" and "old fart."  Docket No. 35 at 11-14.

First, plaintiff's argument that defendant was inconsistent regarding the reasons for plaintiff's termination is unavailing.  All the employee statements that plaintiff relies on indicate that his termination was prompted by his unwillingness to follow defendant's policies, specifically the policy of checking the outside temperature gauge.  Docket No. 35 at 11-12.  Minor differences in phrasing or emphasis among these statements are

6

insufficient to raise an inference that they are pretextual.

Second, plaintiff himself seems to argue that the underlying reason for his termination was personal favoritism and not age discrimination.  For example, he states that supervisors played favorites and that favoritism played a part in the decision of other employees to leave defendant's employment.  Docket No. 35 at 8.  He also states that he was not in the "good graces" of his managers and that, as a result, they frequently wrote him up for rule violations.  Docket No. 35 at 10.  He offers the deposition testimony of Emma Greenwood, another employee of defendant during the relevant time period, that further supports an inference that the problem was favoritism and not discrimination.  Docket No. 29-2 at 8, Greenwood dep., 54 ll.3-4 ("there was just way too much favoritism there").  Personal favoritism is not prohibited by the ADEA. *See Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008) ("Employers are free to terminate at-will employees for any other reason–however unfair, unwise, or even erroneous–so long as it is not unlawful.").

Third, the undisputed facts show that, whatever defendant's policy was in the past, defendant made it clear after the early September shipment was ruined that employees had to check the outside temperature gauge of each truck.  In fact, plaintiff testified at his deposition that, on the morning of September 22, 2009, he received a reminder during a pre-shift meeting to check the temperature on all shipments.  Docket No. 21-4 at 3, Cottrell dep., 195 ll.9-13 ("Q.  What was your involvement with that load? A.  Well, they had just brought up, you know, 'Make sure you guys check your temperatures,' blah, blah, blah, blah.").  Although plaintiff denies being specifically reminded to check the temperature on the outside gauge, Docket No. 35 at 2, ¶ 9, he

testified at his deposition that he did not consult any gauges on the spoiled shipment but rather asked the driver what the temperature was and recorded that number. Docket No. 21-4 at 3, Cottrell dep., 194:23-195:20.  Moreover, plaintiff did not mention at his deposition defendant's alleged failure to remind him to check the outside gauge. *See id*.  In addition, Mrs. Greenwood testified that management was unhappy with the pervasive violations of the policy and committed to enforcing it more strictly following the spoiled Florida shipment.  Docket No. 29-2 at 11, Greenwood dep., 103 ll.1-4.  As plaintiff was on notice that violations would no longer be tolerated, his argument that they were tolerated in the past is not relevant.

Fourth, the alleged insufficiencies in defendant's investigation do not show that defendant was motivated by bias.  For example, plaintiff alleges that defendant's investigation was inadequate because defendant did not take into account the fact that (1) plaintiff verified the temperature with the driver verbally; (2) the truck was already partially loaded with frozen goods when plaintiff began loading it; and (3) there was a temperature gauge inside the particular truck being loaded.  Docket No. 35 at 12-13. These arguments do not tend to show that defendant is lying about its reason for terminating plaintiff, but rather suggest that his termination was unnecessary because he did, in fact, follow defendant's established safe operating practices. *See* Docket No. 21-4 at 2, Cottrell dep., 207:3-208:7.  However, the question of whether defendant made a mistake in terminating plaintiff is not properly posed in an ADEA discrimination claim.  The Court's role is not "to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal citations omitted).

Plaintiff's argument that defendant should have considered other issues in making its determination does not tend to show that the stated reason for its action was pretextual, only that it might have been ill advised.

Finally, plaintiff alleges that he "was commonly referred to by co-workers, managers, and supervisors as 'old man, 'old fart,' and 'old fucker'" and that Mr. Mendez stated that plaintiff did not need additional training because "[h]e won't be here that long."  Docket No. 35 at 13-14.  Plaintiff does not, however, offer any evidence linking these alleged comments to his termination.  Although it appears that Mr. Mendez was a decision-maker in plaintiff's termination, Docket No. 21 at 4, ¶ 13, his alleged comment is unrelated to plaintiff's age.  In fact, Mrs. Greenwood's deposition testimony attributes Mr. Mendez' comment to personal conflicts and to favoritism as opposed to age-based animus.  Docket No. 29-2 at 8, Greenwood dep., 53:12-54:7 ("They did not like him, and they let it be very known that they did not like him.").  Moreover, the alleged references to plaintiff as "old fart" or "old man" by unidentified "co-workers, managers, and supervisors" are in the nature of stray remarks that do not, on their own, support an inference of discrimination.  *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

As defendant has asserted a legitimate, non-discriminatory reason for plaintiff's termination, and plaintiff has not raised a genuine dispute of material fact as to whether the stated reason is pretextual, plaintiff's claim for discriminatory termination cannot survive summary judgment.

### B.  Title VII

Plaintiff's second claim for relief is that defendant retaliated against him for

opposing age-based discrimination.

Title VII prohibits discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter."  42 U.S.C. § 2000e-3(a).  A viable claim for retaliation requires a plaintiff to show that "(1) []he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).  Protected opposition "must convey to the employer . . . concern that the employer has engaged in a practice made unlawful by the ADEA."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  "[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII."  *Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Here, plaintiff alleges that he engaged in protected opposition "by informing his supervisors individually and during numerous pre-shift meetings that he was not being trained to use the . . . computer system while his younger co-workers were."  Docket No. 4 at 13, ¶ 81.  He also alleges that he reported the discrimination to the General Manager on October 1, 2009.  Docket No. 4 at 14, ¶ 82; Docket No. 21-14.  In addition, he alleges that defendant retaliated against him for these actions by "condoning the derogatory treatment of Plaintiff, validating pre-textual disciplinary actions against Plaintiff, and ultimately terminating Plaintiff's employment."  Docket No. 4 at 14, ¶ 83.  Defendant asserts that plaintiff's complaints regarding computer training did not constitute protected activity under Title VII.  Docket No. 21 at 11.

Plaintiff testified that he repeatedly requested training on the computer system. For example, he stated that he asked "to be trained like the other people," Docket No. 21-4 at 4, Cottrell dep., 178 ll.17-22; that he wrote in the logbook "Today was supposed to get three hours draining [sic]. Did not receive training. No one to relieve me," Docket No. 21-4 at 5, Cottrell dep., 183 ll.3-5; and that he frequently asked "When am I going to receive some training?" Docket No. 21-4 at 5, 184 l.2. Mrs. Greenwood confirmed this, stating that plaintiff "complained [in the logbook] about not getting enough training and that he did not understand the computer." Docket No. 29-2 at 4, Greenwood dep., 32 ll.2-4.

Plaintiff, however, does not offer evidence that he ever linked his requests for training to his concerns about age discrimination. None of the deposition testimony that plaintiff cites indicates that he vocally opposed age discrimination, as opposed to making requests regarding his personal treatment. *See* Docket No. 35 at 15. Simply requesting training is not sufficient to "convey to the employer . . . concern that the employer has engaged in a practice made unlawful by the ADEA." *Hinds*, 523 F.3d at 1203. Likewise, the October 1, 2009 letter does not mention age discrimination; although, as it was written after plaintiff's termination, it is unclear how it could be relevant to a claim for retaliation. Since plaintiff's requests for training did not voice opposition to age discrimination, there is no evidence that defendant had the requisite information to form an impermissible retaliatory motive. *See Petersen*, 301 F.3d at 1188.

As plaintiff has not raised a genuine dispute of material fact as to whether he engaged in protected activity, his claim for retaliation cannot survive.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's First

and Second Claims for Relief [Docket No. 21] is GRANTED.  The case will proceed on

plaintiff's claim for a hostile work environment.

DATED February 13, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge